IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARONDA HOMES, LLC, | ) |
| | ) |
| | )  2:20-CV-01526-CCW |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MOTORISTS MUTUAL INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Motorists Mutual Insurance Company's Motion to Dismiss. ECF No. 5. For the reasons that follow, Defendant's Motion will be GRANTED IN PART AND DENIED IN PART.

**I.   Background**

Plaintiff, Maronda Homes, LLC, filed its Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, on September 9, 2020. ECF No. 1 at ¶ 1. Plaintiff served Defendant on September 18, 2020, and Defendant timely removed the case pursuant to 28 U.S.C. § 1441 to this Court on October 9, 2020, invoking this Court's diversity jurisdiction. *See id.* at ¶¶ 2, 5, 16 and 18; 28 U.S.C. § 1332.

Plaintiff, a Pennsylvania LLC engaged in the construction and sale of homes, *see* ECF No. 1 at ¶¶ 10–12 and ECF No. 1-1 at ¶ 3, alleges that Defendant is obligated to defend and indemnify it under an insurance policy (the "Policy") issued to Frey Excavating ("Frey"), one of Plaintiff's subcontractors, and under which Plaintiff is named as an "additional insured." *See id.* at ¶¶ 1–2. In its Complaint, Plaintiff asserts three claims: (1) breach of contract; (2) breach of the implied

covenant of good faith and fair dealing; and (3) bad faith insurance practices under 42 Pa.C.S. § 8371. *See* ECF No. 1-1. Plaintiff is seeking monetary and declaratory relief. *See id.* at ¶ 1.

The alleged facts underlying this case are as follows: In 2017, Plaintiff entered into contracts with two sets of future homeowners ("Homeowners") for houses to be built in Plaintiff's Granite Ridge development in McDonald, PA. *See* ECF No. 1-1 at ¶¶ 3, 51–52. The homes were constructed in 2017, and the homeowners closed on and took possession of the properties in October and December 2017, respectively. *See id.* at ¶ 52. Within months of moving into their new homes, however, Homeowners discovered cracking in the foundations and brickwork, which was later linked to soil erosion/movement on the lots.[1] *See id.* at ¶¶ 60, 62. Homeowners thereafter sued Plaintiff in two, virtually identical, state court actions (the "Underlying Actions"), alleging that unsuitable fill material and improper compaction of the lots by Plaintiff and its subcontractors caused the damage to the homes. *See id.* at ¶¶ 53, 57–58, 60.

Homeowners commenced the Underlying Actions by filing Writs of Summons in April 2019. *See id.* at ¶ 53. Plaintiff notified Defendant of the Underlying Actions shortly thereafter, informing Defendant that Homeowners "were asserting claims arising out of the Grading Services at the Premises and provided information regarding the claims and the investigation performed to date." *See id.* at ¶¶ 54–55. In June, 2019, Defendant confirmed that Plaintiff was an "additional insured" under the Policy, but, according to Plaintiff, did not give any indication of its coverage position or issue any reservation of rights under the Policy. *See id.* at ¶ 56.

---

[1] The cause of the earth movement on the properties is contested. Homeowners allege it was caused by use of improper fill material and faulty soil compaction by Plaintiff and its subcontractors. ECF No. 1-1 at ¶ 60. Plaintiff, on the other hand, argues that local mine subsidence is to blame. *Id.* at ¶ 63.

Then, in November 2019, Homeowners filed their complaints in the Underlying Actions,[2] and Plaintiff tendered the claims to Defendant for coverage under the Policy. *See id.* at ¶ 59. Defendant then informed Plaintiff that coverage for the damages alleged in the Underlying Actions would be denied (1) pursuant to an exclusion to the Policy and/or (2) because Defendant did not believe any "enforceable indemnity agreements between Maronda and Frey" existed. *See id.* at ¶¶ 67, 71, and 73. According to Plaintiff, Defendant's denial of coverage came without warning, *see id.* at ¶¶ 66, 68. In response, Plaintiff threatened to pursue a coverage action to enforce its alleged rights. *See id.* at ¶ 78. Apparently seeking to avoid litigation, Plaintiff, Defendant, and Frey worked cooperatively to attempt to settle the Homeowners' claims in the Underlying Actions. *See id.* at ¶¶ 80–83. Those efforts ultimately proved unsuccessful, and this litigation followed. *See id.* at ¶ 84–85.

In its Motion, Defendant argues that (1) "there are no factual allegations that trigger coverage for Maronda as an 'additional insured' within the four corners of the Complaint[s]" filed in the Underlying Actions; and (2) even if Plaintiff qualifies as an "additional insured," an exclusion to the Policy is established on the face of the complaints in the Underlying Actions and, therefore, Plaintiff's breach of contract claim (Count I) should be dismissed. *See* ECF No. 6 at 11–12. Under that exclusion, property damage will not be covered once the "work" has been "completed" or "put to its intended use." *See id.* at 4, 11–12. According to Defendant's denial of coverage letter, because the Underlying Actions allege that the damage did not "manifest" until after the homeowners took possession of the homes, any of Plaintiff's or Frey's "work" was complete and had been put to its intended use. *See id.* at 12–14. Defendant further argues that

---

[2] Homeowner's complaints in the Underlying Actions are virtually identical, aside from the specific dates that the individual Homeowners entered into their contracts with Plaintiff and then took possession of the properties. *Compare* ECF No. 5-1 *with* ECF No. 5-2.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count II) should be dismissed because (1) it is duplicative of the breach of contract claim and (2) because there can be no violation of the implied covenant where coverage is denied under the plain terms of the Policy. *See id.* at 14–15. Finally, Defendant claims that Plaintiff's bad faith insurance practices claim (Count III) should be dismissed because its denial of coverage was based on a reasonable interpretation of the Policy and applicable law. *See id.* at 16–17. In sum, Defendant's Motion hinges on the argument that an affirmative defense—the exclusion to the Policy—is clearly established on the face of the complaints in the Underlying Actions. *See id.* at 17–18.

**II.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to

4

> the assumption of truth." Finally, "where there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

As relevant here, "[w]here an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly bears the burden of proving such defense." *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006). "To prevail on a Rule 12(b)(6) motion to dismiss based on an affirmative defense…a defendant must show that 'the defense is "apparent on the face of the complaint" and documents relied on in the complaint.'" *Id.* (quoting *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 923 n.2 (3d Cir. 2015) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014))). "Generally speaking, [courts] will not rely on an affirmative defense . . . to trigger dismissal of a complaint under Rule 12(b)(6)." *Victaulic Co. v. Tieman*, 499 F.3d 227, 234–35 (3d Cir. 2007).

### III.  Discussion

As noted above, federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332(a). Accordingly, the Court will apply the substantive law of the forum state, Pennsylvania, in resolving this Motion. *See Spence v. ESAB Group*, 623 F.3d 212, 216 (3d Cir. 2010) (noting that "as a federal court sitting in diversity, we are required to apply the substantive law of the state whose law governs the action.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

A few principles of Pennsylvania law regarding insurance contracts, recently summarized by the Third Circuit, provide the framework for our opinion here:

> First, a liability insurer's duty to defend an insured and its duty to indemnify are distinct, though related obligations. *See Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 n.7 (Pa. 2006). Both are creations of contract. *See Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290–91 (Pa. 2007); *Genaeya Corp. v. Harco Nat. Ins. Co.*, 991 A.2d 342, 347 (Pa. Super. Ct. 2010).
>
> Second, in the context of a declaratory judgment action to determine an insurer's obligations, Pennsylvania courts consistently apply what is known as the "four-corners rule." *See Lupu v. Loan City LLC*, 903 F.3d 382, 389–90 (3d Cir. 2018) (collecting cases). That is, when a policyholder is sued, "an insurer's duty to defend is triggered, if at all, by the factual averments contained in [the underlying] complaint[.]" *Kvaerner*, 908 A.2d at 896; *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.,* 2 A.3d 526, 541 (Pa. 2010); *Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745–46 (Pa. 1999) ("A carrier's duties to defend and indemnify an insured in a suit brought by a third party depend upon a determination of whether the third party's complaint triggers coverage."); *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016). And "[i]f the allegations of the underlying complaint potentially could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *Ramara*, 814 F.3d at 673; *see Jerry's Sport Ctr.*, 2 A.3d at 541. If triggered, the duty to defend also carries "a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy." *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). Both duties are at issue until the underlying "claim is confined to a recovery that the policy does not cover." *Id*.
>
> Third, because the duty to defend is "broader" than the duty to indemnify, if a court determines that the former does not exist, neither does the latter. *See Kvaerner*, 908 A.2d at 896 n.7; *Ramara*, 814 F.3d at 673.

*Sapa Extrusions, Inc. v. Liberty Mutual Ins. Co.,* 939 F.3d 243, 249–50 (3d Cir. 2019). Accordingly, in determining whether Plaintiff's breach of contract claim (Count I) should be dismissed, either because Plaintiff is not an "additional insured" within the context of the Underlying Actions or because the completed work/intended use exclusion bars coverage, we will look to the complaints in the Underlying Actions for the relevant factual allegations.

### A. Defendant's Motion will be Denied with Respect to Plaintiff's Breach of Contract Claim (Count I)

Defendant advances two arguments in favor of dismissal of Count I of Plaintiff's Complaint. Neither argument is availing; therefore, Defendant's Motion with respect to Count I will be denied.

#### 1. The Underlying Actions Sufficiently Reference Frey to Trigger Coverage for an "Additional Insured" under the Policy

First, Defendant contends that it did not breach the Policy by refusing to defend or indemnify Plaintiff because the allegations in the Underlying Actions do not reference "Frey or any part that Frey played in causing any alleged injury or damage" and, therefore, "there are no factual allegations that trigger coverage for Maronda as an 'additional insured' within the four corners of the Complaint[s]." ECF No. 6 at 11. In support, Defendant points out that both "additional insured" provisions which might provide Plaintiff coverage under the Policy require alleged injury or damage "be 'caused, in whole or in part, by,' 'your acts or omissions' or 'those acting on your behalf,' where 'you' and 'your' are singularly defined on the Policy as the Named Insured—Frey." *Id.*

The problem for Defendant, though, is that the complaints in the Underlying Actions *do* reference Frey, not by name but as an agent of Defendant, and allege damages caused by improper fill and soil compaction on the subject lots. *See, e.g.,* ECF No. 5-1 at ¶ 25 ("Defendant, through its agents, failed to properly place and compact fill on the Lot"). Furthermore, Homeowners incorporated into their allegations two engineering reports which identify Frey as the excavation contractor at the Granite Ridge Development. *See* ECF No. 5-1 at ¶ 13 (attaching Ex. C, PS&R House Distress Investig. Report) and ¶ 20 (attaching Ex. E, Report of Bodhan I. Czmola, P.E.). Thus, because "[i]n ascertaining whether an insurer's duties are triggered under a policy, the allegations in the underlying complaint are accepted as true and are construed in favor of the

7

insured," *Erie Ins. Exch. v. Costa Constr.*, No. 1516 WDA 2014, 2015 Pa. Super. Unpub. LEXIS 1288, at *7 (May 8, 2015) (citing *Kvaerner*, 908 A.2d at 896), and because the complaints in the Underlying Actions point to Plaintiff and "its agents" (*i.e.* Frey, according to the reports attached to and expressly relied on by the complaints), the allegations contained in the Underlying Actions are sufficient to trigger coverage for Plaintiff as an "additional insured." *See also Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) ("As long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend. Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.").

### 2. Application of the Completed Work/Intended Use Exclusion is Not Sufficiently Clear at this Stage of the Case to Warrant Dismissal

Second, Defendant argues that Count I should be dismissed because exclusions to the Policy applicable to the relevant "additional insured" provisions bar coverage for damages "occurring" after the named insured's (here, Frey's) work has been either (1) completed or (2) put to its intended use. *See* ECF No. 6 at 11–13. Under Pennsylvania law, occurrence-based insurance policies, like the one at issue here, are triggered when injury first manifests. Importantly, "manifestation" is distinct from both the cause of an injury and the actual discovery of the injury. Instead, "[a]n occurrence happens when the injurious effects of the negligent act first manifest themselves in a way that would put a reasonable person on notice of injury." *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 861 (Pa. Super. Ct. 1986); *see also City of Erie v. Guar. Nat'l Ins. Co.*, 109 F.3d 156, 162–63 (applying *D'Auria* definition of "occurrence"). In other words, while "manifestation" could occur contemporaneously with either the cause or discovery of an injury, it may also occur some time after the act or omission that causes an injury but some time before the injury is actually discovered. *See D'Auria*, 507 A.2d at 862.

In *St. John*, the Pennsylvania Supreme Court applied the "first manifestation rule" articulated in *D'Auria*, holding that injury to a herd of dairy cows caused by improper installation of a plumbing system, resulting in contamination to the herd's water supply, "manifested" when the cows first began exhibiting illnesses related to drinking contaminated water, not when the farmer finally identified the contaminated water as the cause of the cows' ill health. *See Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 17–18 (Pa. 2014). Of course, this date was also *after* the faulty installation of the plumbing system. *See id.* at 3–4.

Significantly, for our purposes, the Pennsylvania Supreme Court's decision in *St. John* came after a jury trial had determined the relevant, material facts of the case. *Id.* at 4–5. This procedural posture is important because determining when an injury "manifested…for purposes of triggering coverage…present[s] mixed questions of law and fact." *Id.* at 13. Accordingly, "[w]hile identifying the timing and nature of physical injury requires fact finding by the trial court, determining whether these physical injuries trigger coverage by manifesting themselves in a manner that would put a reasonable person on notice of injury is a question of law." *Id.*

Here, there has been no fact finding yet. The complaints in the Underlying Actions paint a factual scenario that, read in the light most favorable to Plaintiff, is like that found in *St. John*. That is, Homeowners discovered damage to their properties weeks or months after taking possession of the residences. This was some time after the alleged improper placement and compaction of fill material on the lots. Thus, although possible, it is not clear from the complaints in the Underlying Actions that Homeowners' discovery of the damage to their property coincided with manifestation of the damage. Rather, discovery is needed to determine when "the injurious effects of the negligent act[s] first manifest[ed] themselves in a way that would put a reasonable

9

person on notice of injury." *D'Auria*, 507 A.2d at 861. Thus, Defendant's Motion with respect to Count I will be denied.

### B. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) will be Dismissed

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count II) must be dismissed because "under Pennsylvania law, a 'claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim.'" *Davis v. Wells Fargo*, 824 F.3d 333, 352 (3d Cir. 2016) (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013)). That is, a claim for breach of the implied covenant of good faith and fair dealing "separate and distinct from a breach of contract claim" cannot be maintained because "the covenant does nothing more than imply certain obligations into the contract itself." *Id.* (quoting *JHE, Inc. v. SEPTA*, No. 1790, 2002 Phila. Ct. Com. Pl. LEXIS 78, at *13 (May 17, 2002)); *see also Tubman v. USAA Cas. Ins. Co.*, 943 F.Supp.2d 525, 529 (E.D. Pa. 2013) (collecting cases).

As such, to the extent it purports to state a separate claim from Count I, Count II will be dismissed as an independent cause of action because it merges with Plaintiff's breach of contract claim at Count I. *Davis*, 824 F.3d at 352 ("Because Davis cannot maintain an independent cause of action for breach of the covenant of good faith and fair dealing under Pennsylvania law, that claim should be dismissed and his arguments concerning bad faith should be addressed in connection with his surviving breach of contract claim"); *see also Tubman*, 943 F.Supp.2d at 529 (noting that, although plaintiff could not maintain a separate claim for breach of the implied covenant of good faith and fair dealing, "the claim may proceed under her breach of contract claim"). Furthermore, because amendment of Count II would be futile—Pennsylvania law does not allow for a plaintiff to maintain a claim for breach of the implied covenant of good faith and

fair dealing separate and apart from a breach of contract claim—Plaintiff will not be afforded leave to amend.

### C. Defendant's Motion will be Denied with Respect to Plaintiff's Claim for Bad Faith Insurance Practices (Count III)

Finally, Defendant argues that Plaintiff's claim for bad faith insurance practices under 42 Pa.C.S. § 8371 (Count III) should be dismissed because (1) if applicable, the completed work/intended use exclusion to the Policy makes Defendant's declination of coverage *per se* reasonable and (2) even if Defendant incorrectly refused coverage, a reasonable basis exists under Pennsylvania law and the Policy for its denial of coverage such that a statutory bad faith claim cannot stand. *See* ECF No. 6 at 17. Because we have already concluded that application of the completed work/intended use exclusion is not clear, we will address only whether Plaintiff has sufficiently pled a claim for bad faith insurance practices under § 8371.

Two elements are necessary to state a claim for bad faith insurance practices: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of reasonable basis" in denying the claim. *Rancosky v. Wash Nat'l. Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (adopting two-part test articulated in *Terletsky v. Prudential Property & Cas. Ins. Co.*, 649 A.2d 680 (Pa. Super. 1994)). Importantly, "[b]ad faith claims are fact specific and depend on the conduct of the insurer vis a vis the insured." *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (Pa. Super. Ct. 2006). Thus, while Plaintiff will be required to prove its bad faith claim by "clear and convincing evidence," *Rancosky*, 170 A.3d at 365, the allegations in the Complaint—namely, that Defendant failed to investigate Plaintiff's tender of the claims, denied coverage despite cooperatively participating in attempts to settle the Underlying Actions, and rejected settlement offers from Homeowners within the limits of the Policy, *see* ECF No. 1-1 at ¶¶ 75–77, 80–84—are sufficient at this stage to survive Defendant's Motion.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion is hereby GRANTED IN PART AND DENIED IN PART as follows:

1. With respect to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing, Defendant's Motion is GRANTED and Count II of the Complaint is hereby DISMISSED;

2. With respect to Plaintiff's claims for breach of contract (Count I) and bad faith insurance practices (Count III), Defendant's Motion is DENIED.

Defendant shall respond to Plaintiff's Complaint on or before April 30, 2021.

DATED this 16th day of April, 2021.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record